IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLENN A. ELLIS, Individually and on behalf of a class of all persons and entities similarly situated <br><br> Plaintiffs <br><br> v. <br><br> LIBERTY CAPITAL GROUP INC. <br> 110 Camino Del Rio South, Suite 440 <br> San Diego, California 92108 <br><br> Defendant | CIVIL ACTION NO.: <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

### I.    INTRODUCTION

1. Plaintiff Glenn Ellis ("Mr. Ellis" or "Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012)

2. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Federal Communications Commission." *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶1 (July 10, 2015)

3. The TCPA is designed to protect consumer privacy by prohibiting unsolicited, prerecorded calls, unless the caller has the "prior express written consent" of the called party.

1

4. Plaintiff alleges that Defendant Liberty Capital Group Inc. (herein "Liberty") made automated telephone calls using equipment prohibited by the TCPA to promote its services without Plaintiff's prior express written consent, and while his number was on the National Do Not Call Registry.

5. Because the call to Plaintiff was transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

6. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## II.  PARTIES

7. Plaintiff is an attorney practicing and residing in Philadelphia County, Pennsylvania.

8. Defendant Liberty Capital Group Inc. (herein "Liberty") is a California corporation with its principal place of business at 1011 Camino Del Rio South, Suite 440, San Diego, California 92108.

9. Defendant Liberty engages in telemarketing nationwide, including into this District, as it did with Mr. Ellis.

## III.  JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2).

11. The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

12. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

13. Defendant Liberty regularly engages in business in this District, including making telemarketing calls into this District, as it did with the Plaintiff.

14. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiff were made to this District. Furthermore, venue is proper because a substantial part of property that is the subject of the action is situated in this District; the Plaintiff's cellular telephone.

### IV. BACKGROUND OF THE TCPA

15. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

16. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until

the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

17. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

18. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

19. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

20. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

21. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

4

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

22. Unlike many federal statutes, Congress embedded the reasons for the TCPA into the statute itself with explicit Congressional Findings. 105 Stat. 2394, §§ 10, 12, 14 (notes following 47 U.S.C. § 227).

23. *Mims* explicitly cited these Congressional Findings in noting that "'automated or prerecorded telephone calls' . . . were rightly regarded by recipients as "an invasion of privacy." *Id.* (citing 105 Stat. 2394). Accordingly, Congress found that:

> **Banning such automated or prerecorded telephone calls** to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, **is the only effective means of protecting telephone consumers** from this nuisance and privacy invasion.

*Id.* at § 14 (emphasis added).

24. Indeed, as the United States Supreme Court recently held in a different context, "Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life." *Riley v. California*, 573 U.S. 373, 134 S.Ct. 2473, 2494-95, 189 L.Ed.2d 430 (2014)

5

## V. FACTUAL BACKGROUND

25. Defendant Liberty is a business funding provider that targets small businesses to offer high interest business and equipment loans. *See* www.libertycapitalgroup.com.

26. Defendant Liberty uses telemarketing to promote its loan products.

27. Defendant Liberty's telemarketing efforts include the use of automated dialing equipment and robocalling.

28. At all relevant times, Defendant Liberty knew or should have known that the use of automated dialing equipment and robocalling was a violation of the TCPA. In fact, in 2013 Defendant Liberty was sued in California for illegally sending faxes to businesses in violation of the TCPA.

29. Starting in January of 2019, the Plaintiff began receiving unsolicited robocalls on his cellular telephone (XXX-XXX-2557) from an unknown number in California offering to provide him with a business loan.

30. When the Plaintiff answered the phone, there was a distinct click and a significant pause on the other end of the cellular telephone. After the pause, the following recorded message started playing:

> "Hi its Cherry great news I just noticed that you got pre-approved with capital funding on cash advance this is so exciting so please give me a ring so we can get this by phone number is 888-908-6995 again its 888-908-6995 its Cherry or any of my assistants will be more than happy to help you hope to hear from you soon thank you bye-bye."

31. The Plaintiff continued to receive the same unsolicited robocalls from "Cherry" on his cellular telephone offering to provide him with a business loan. For example:

    a. On March 22, 2019, the Plaintiff received the same scripted robocall from "Cherry". The Plaintiff's caller ID stated that the call was coming from Del Mar and that the number was 858-703-5403.

6

    b. On March 22, 2019, the Plaintiff received the same scripted robocall from "Cherry". The Plaintiff's caller ID stated that the call was coming from New York and that the number was 212-377-6585.

    c. On March 27, 2019, the Plaintiff received the same scripted robocall from "Cherry". The Plaintiff's caller ID stated that the call was coming from San Diego and that the number was 858-987-8587.

    d. On April 9, 2019, the Plaintiff received the same scripted robocall from "Cherry". The Plaintiff's caller ID stated that the call was coming from Chula Vista and that the number was 619-371-3005.

    e. On April 18, 2019, the Plaintiff received the same scripted robocall from "Cherry". The Plaintiff's caller ID stated that the call was coming from San Diego and that the number was 619-762-6544.

32. In addition to the above referenced calls, Plaintiff has received literally dozens of unsolicited robocalls from "Cherry" on his cellular telephone.

33. These facts, as well as the geographic distance between the Plaintiff and the Defendant, as well as the fact that this call was part of a nationwide telemarketing campaign demonstrate that the call was made using an automatic telephone dialing system ("ATDS" or "autodialer") as that term is defined in 47 U.S.C. § 227(a)(1).

34. In fact, the use of a pre-recorded message itself is indicative of the use of an ATDS.

35. Before filing this lawsuit, Plaintiff called the above number and spoke to an employee who identified himself as "Ralph". During the call, Plaintiff asked "Ralph" for the name of the company and where it was located.

36. Plaintiff was informed that the company that had been calling him for months was Defendant Liberty located in San Diego, California and that its website was www.libertycapitalgroup.com.

7

37. Plaintiff also asked how Defendant had gotten his cellular telephone number and asked why they had called him without his consent. In response, Ralph hung up on the Plaintiff.

38. In addition to calling the above numbers, to confirm that they all trace back to Defendant Liberty, Plaintiff also tracked some of the numbers through various online databases and confirmed that they were associated with Defendant Liberty's marketing efforts.

39. Plaintiff continues to receive robocalls from Defendant Liberty.

40. At no time had the Plaintiff expressed an interest in these services nor had he given his express written consent to receive calls regarding these services.

41. Defendant Liberty did not have Plaintiff's prior written constant to call his cellular telephone.

42. Plaintiff and the other call recipients are harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls, they were distracted from their work and family lives and their privacy was improperly invaded.

43. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

## VI.   CLASS ACTION ALLEGATIONS

44. As authorized by Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure and Rule 23.1 of the Local Rules for the Eastern District of Pennsylvania, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

45. The class of persons Plaintiff proposes to represent include:

All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf made one or more non-emergency telephone calls; (b)

8

promoting Defendant's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial (the "Class").

46. Excluded from the classes are Defendant Liberty, any entities in which the Defendant Liberty has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

47. The proposed class members are identifiable through phone records and phone number databases.

48. The automated technology used to contact the Plaintiff is capable of contacting hundreds of thousands of people a day, so the potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

49. Plaintiff is a member of the class.

50. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

   a. Whether the Defendant Liberty used an automatic telephone dialing system to make the calls at issue;

   b. Whether the Defendant Liberty placed telemarketing calls without obtaining the recipients' valid prior express written consent;

   c. Whether the Defendant Liberty violations of the TCPA were negligent, willful, or knowing; and

   d. Whether the Plaintiff and the class members are entitled to statutory damages as a result of the Defendant Liberty actions.

51. Plaintiff's claims are based on the same facts and legal theories as the claims of all class members, and therefore are typical of the claims of class members, as the Plaintiff and

9

class members all received telephone calls through the same or similar dialing system on a cellular telephone line.

52. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions.

53. The actions of the Defendant Liberty are generally applicable to the class as a whole and to Plaintiff.

54. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant Liberty and/or its agents.

55. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

56. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## VII.  CLAIMS

### Count One
### Violation of the TCPA, 47 U.S.C. § 227(b)

57. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

58. The foregoing acts and omissions of Defendant Liberty and/or its affiliates, agents, and/or other persons or entities acting on Defendant Liberty's behalf constitute numerous

and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS.

59. As a result of Defendant Liberty's and/or its affiliates, agents, and/or other persons or entities acting on Defendant Liberty's behalf's, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, as well as attorneys' fees and other damages, pursuant to 47 U.S.C. § 227(b)(3)(B).

60. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant Liberty and/or its affiliates, agents, and/or other persons or entities acting on Defendant Liberty's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

61. Defendant's violations were negligent, willful, or knowing.

## Relief Sought

WHEREFORE, for himself and all call members, Plaintiff respectfully request that this Court enter judgment in their favor and award the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendant Liberty and/or its affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA;

E. An order enjoining Defendant Liberty and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

11

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

FREIWALD LAW, P.C.

By: _____
AARON J. FREIWALD, ESQUIRE
JOSEPH MARANO, ESQUIRE
Counsel for Plaintiff
1500 Walnut Street, 18th Floor
Philadelphia, PA 19102
215-875-8000
Fax: 215-875-8575
ajf@freiwaldlaw.com
jm@freiwaldlaw.com

Dated:   May 16, 2019